## THE PEOPLE *a.* BOGART.

*Supreme Court, First District; General Term, September,* 1856.

### MISDEMEANOR.—CORRUPT INTENT.

On trial of an indictment for a misdemeanor, under the statute provision, (2 *Rev. Stats.* 696, § 39), that the doing of any prohibited act, a punishment for which is not otherwise provided, shall be deemed a misdemeanor, it is not necessary for the prosecution to prove that the act was done with a corrupt intent.

Allegations in the indictment, that the act was done " wilfully, maliciously, unlawfully and corruptly," do not render proof of a corrupt intent necessary ; they are formal words.

Certiorari to the judges of the Court of General Sessions.

Abraham Bogart, Jr. was indicted for misdemeanor, con-

sisting in a violation of the act of 1846, (*Laws* of 1846, 408), which forbids any other officer than the committing magistrate to let to bail, unless notice of the application to bail shall be given to the district attorney ;—&c.

The indictment charged, that one William Nambe was indicted for grand larceny, and was thereafter committed for trial by Recorder Smith, of the city of New York ;—that while he stood committed, the defendant, " *well knowing such law aforesaid*, with force and arms, at the ward, city and county aforesaid, on July 28, 1855, did *wilfully and unlawfully, maliciously and corruptly* admit to bail said William Nambe, as appears by the said recognizance to answer then and there, by the said Abraham Bogart, Jr., police justice, taken," &c. ; and that he thereupon discharged Nambe, *well knowing* that he stood committed by the Recorder, and that he, the defendant, was not the committing magistrate, and *well knowing* that notice of the application to bail Nambe had not been given to the district attorney.

On the trial, before the court of general sessions for the city of New York, in February, 1856, the prosecution proved the commitment of Nambe, *alias* Lambe, by Recorder Smith. They further proved a commitment of Nambe, *alias* Lawson, by Justice Bogart, on a complaint for the commission of another grand larceny. Both of these commitments were dated July 18, 1855. They further proved that on July 28, 1855, Nambe was admitted to bail by defendant on *both* commitments. A separate recognizance for each commitment was executed. They further put in evidence tending to show that the bail taken by the defendant turned out to be " straw bail."

The defence admitted that no notice of application to let to bail had been given to the district attorney.

The city judge charged the jury upon the various points arising, among which was the question whether the prosecution were bound to prove a corrupt intent. The following is the substance of the charge upon that point.

CAPRON, J.—The defendant here is a police magistrate. The people charge him, under that section of the statute which reads :—" Where the performance of any act is prohibited by

any statute, and no penalty for the violation of such statute is imposed, either in the same section containing such prohibition, or in any other section or statute, the doing such act shall be deemed a misdemeanor." In other words, the act is a misdemeanor, whether committed by an officer or anybody else who is prohibited by law from doing that act.

Now, it cannot make any difference whether the individual is an officer or a private citizen; because if an officer does any act beyond his jurisdiction, and therefore contrary to law, he cannot be said to do it officially, and therefore it is out of his office. An officer has two relations; he is a private citizen and an officer. What he does in his official capacity and within his jurisdiction, he does as an officer, but what he does not in his official capacity, or where he has no jurisdiction, he does not as an officer. Therefore, it is my opinion that the act covers the case of an officer as well as of a private individual, upon the ground, that what he does, if forbidden by law, is not an official duty at all, any more than if done by a man who did not hold the office. When the performance of an act is prohibited by the statute, it is a misdemeanor, and the person committing it is liable to the punishment I have stated.

Now the people say that the defendant violated this law, which says: "No officer other than the committing magistrate shall let to bail any person charged with a criminal offence, unless notice of the application to bail such person shall have been given to the district attorney of the city and county of New York, at least two days before such application, specifying the name of the officer, the time and place when and where such application will be made, and the names and residence of the proposed bail, and the original commitment and proofs upon which it is founded, shall have been presented to the officer to whom the application for bail is made."

It is an important act. "No officer shall let to bail." That is a complete prohibition on every officer except the magistrate who committed the individual to prison, unless notice is given to the district attorney, and unless the officer to whom the application is made has the original commitment and proofs before him to look at, upon which the prisoner was ar-

rested by the other magistrate and committed to jail. The reason of this provision is, that it may often happen that the same officer who committed the prisoner may be away, sick or dead ; and it will therefore be necessary, from various causes, to go before some officer who did not cause the arrest to be made. But this statute provides that *no other officer shall do it,* unless the district attorney has two days notice of the fact, so that he can look into the case and understand it, and unless the original papers upon which the arrest and commitment were made, are brought before the officer to whom the application is made for bail. These papers inform the officer what is the nature of the case, and he can act intelligently. This statute, therefore, prohibits any officer the right to take bail where another officer has made the commitment, without these papers are presented; and my construction of the law is this; that although an officer like Mr. Bogart may have general authority to let to bail, yet this statute gives him no jurisdiction over a case, which another officer originally had, without the production of the papers upon which the arrest was made, the complaint, and the proofs. If he does not get them, he has no more jurisdiction over a party or case than a common justice of the peace has who undertakes to render judgment against a man without a summons issued and returned duly served. He is prohibited from doing the thing until these papers are produced. If he does it therefore, he does it not as a justice, because he has no jurisdiction in the case as a police justice, without the possession of these papers in the first place. He does it as a private individual, and any other man has just the same right as he has to let to bail.

*   *   *   *   *   *

In coming to a conclusion, gentlemen, upon the guilt or innocence of Justice Bogart, a great deal has been said by the counsel on both sides as to what was necessary to constitute guilt. My own opinion is, and I think it is borne out by the authorities, that where an act is forbidden, and a party does that act, he is guilty of the offence,—he is guilty of a misdemeanor. That it is not necessary under this statute to prove corruption, even in the case of a public officer, charged with doing an act without having acquired jurisdiction in the ordi-

nary literal acceptation of the term as we understand it. But if he intended to do the act, his intention constitutes all that is necessary to be proved. If a man does an act intentionally, he does it wilfully. Intention means will. When I intentionally do a thing, I do it because I will to do it. If this were a judicial act, then I think it would be necessary to show something further than just the doing of the act. But it is a ministerial act. The whole of Justice Bogart's duty, until he had acquired jurisdiction, was ministerial; like a justice issuing a summons and having it returned to him with the proper return endorsed. That is a ministerial and not a judicial act. His judicial duty did not commence until he could entertain the question of bail. He could not legally entertain that question until he got the papers, because the statute says he shall not act until he gets them. Then he cannot do a judicial act until he gets the papers. The act for which Justice Bogart is indicted, is, taking bail without the prior performance of a necessary jurisdictional ministerial act. It is a general rule, that when a public officer is indicted for misbehavior in his office, and when the act done is clearly illegal, it is not necessary, in order to support an indictment, to show that it was done with corrupt motives. Nothing can be plainer. The question is, was this a judicial or a ministerial act. I charge you, gentlemen, that it was wholly ministerial; that all his acts are ministerial until he acquires jurisdiction in the case, and he does not acquire jurisdiction until he has before him all the papers, which section 8 requires, before his right to act attaches. That is too plain to admit of any doubt. Here we have the law where the act was illegal, and certainly it was illegal for him to take bail without having these papers and giving this notice. Where it is illegal, the proof of doing the act is evidence of a bad motive, and constitutes the offence.

The question may arise, whether defendant has the right, by proof upon his part, to show that he had no bad motive. Perhaps, we will say, that he has the right to show that it was not a mistake of the heart; but I think he has not. I think that is a question addressing itself wholly to the court. The question for the jury is, was it illegal for him to take this bail without having these papers? Did he do that act? You will

remember, gentlemen, that Justice Bogart has for several years been a judge, and these statutes he must have had occasion to know all about, for they concerned his every day duties. It may be that he was unaware of the full force of this statute. It may be that he did not understand it; and that you may take into consideration, under all the circumstances, if there is any evidence tending to prove that fact with the view to rebut the presumption of bad intention, arising from the doing of the act.

    \*    \*    \*    \*    \*

My opinion is that it is not necessary for the people to show anything out of the case in order to make out corruption or bad faith. That it being the doing of an official act, without the prior performance of a jurisdictional ministerial act, the fact that the act was illegal, that the officer was prohibited from doing it, except under certain circumstances, renders him chargeable with a knowledge of that law. And that if he did the act, the doing of the act is evidence of all the intent that is necessary to be proved by the people. If he has proved anything here that in your judgment would show that he, notwithstanding the legal presumption of intention, acted honestly and did not mean to do wrong, you may take that into consideration to rebut that presumption, but in doing that you must not allow any of the facts of the case which go to make up the essence of this crime to be lost sight of.

The counsel for the defendant excepted to various parts of the charge; in particular to the charge that the defendant acquired no jurisdiction of the case on the application for bail, unless all the papers mentioned in the statute were before him;—to the charge that the act of the defendant was a ministerial act and not judicial;—to the charge that the doing of the act stated in the indictment was sufficient proof of intention to sustain the prosecution;—and to the charge that it was not necessary, in order to sustain the indictment, to prove corruption. And the counsel requested the court to charge that unless the prosecution had proved actual corruption on the part of Justice Bogart, the jury should not convict under the indictment—that if Justice Bogart did not act from any dis-

honest motive in the matter of taking the bail in question, he should not be convicted;—and that inasmuch as the indictment charged corruption, there must be proof of corruption in order to justify the conviction of the defendant. The court refused so to charge, to which refusal the counsel for the defendant excepted.

The jury rendered a verdict of guilty; and the cause was now brought up upon *certiorari.*

*Henry L. Clinton* for the prisoner.—I. That the defendant had jurisdiction of the case on the application to be let to bail, without the papers mentioned in the statute being before him, sufficiently appears from 2 Revised Statutes (2 ed.), 893, 31 subdivision 4, "The police justices in the city of New York shall respectively have power to let to bail in all cases where the judge of the Court of General Sessions in said city is authorized to let to bail." That the Court of Sessions had jurisdiction to let to bail under the circumstances which surround the case in question when Justice Bogart let to bail, will not be disputed.

II. The court erred in charging that tne act of defendant was not a judicial act. It is rank absurdity to say that the act of a judge in deciding on the sufficiency of papers before him in reference to the question whether a prisoner shall be let to bail is not *judicial*, and that, too, even though the motion for bail ought to be denied. Surely a *judicial* decision is none the less *judicial* because it should have been rendered the other way. As well might it be said that were a judge of the Supreme Court to grant an order of arrest in a civil case, and yet, upon a motion for that purpose, vacate his own order of arrest on account of the insufficiency of the affidavit on which it was granted that the *decision* of the judge granting the order was *ministerial*, while the decision of the same judge vacating the order was *judicial* because the first decision was *bad*, and the last *good* law.

III. The court erred in charging that, in order to sustain the indictment, it was not necessary to prove corruption. The *gist* of the offence charged in the indictment is *corruption.* (The People *v.* Brooks, 1 *Den.*, 457; The People *v.* Coon, 15

*Wend.*, 227; The People *v.* Norton, 7 *Barb.*, 477; The King *v.* Borron, 3 *Barn & A.*, 452, 12 *Johns*, 356; 1 *Russell on Crimes*, 136; 1 *Chitt. Cr. Law*, 873; *Whart. Am. Cr. Law*, 2 *ed.*, 732).

*A. Oakey Hall, district attorney*, for the people.—I. The defendant acted without jurisdiction; he acted illegally; he acted intentionally, and, therefore, wilfully; and the *wilful* doing of the prohibited act satisfies the verdict of guilty, no matter whether the act was done honestly, or with good intentions, or was not corrupt, or is not productive of any injury; and the allegation of corruption is mere surplusage, and may be rejected.

II. *All* magistrates and judges who have power to let to bail are called "officers." (2 *Rev. Stats.*, 4 *ed.*, 893, § 31).

III. *Police* justices, prior to 1833, (*Laws of* 1833, *ch.* 11, § 9) had *limited* jurisdiction as to admitting to bail. After 1833, they possessed powers equal to those of the judges of General Sessions. But they *never* had legal authority to bail any persons except those brought before them *charged* (that is preliminarily before them as charged) with crime. The judges of the General Sessions could issue writs of habeas corpus, and thus acquire jurisdiction of the persons in order to bail them; but a police justice had no power to acquire jurisdiction over a person, except by issuing a warrant against him. The statute says justices or "officers before whom persons charged with crime *shall be brought.*"

IV. The statute giving the police justices *power* to let to bail in all cases where a judge of the Court of General Sessions is authorized by law to let to bail, was a statute merely extending their *power* to certain *felonies* whose punishment exceeded five years. That is, they have *power* to bail in all cases wherein they have jurisdiction. (Commonwealth *v* Canada, 13 *Pick*, 88–90. *Petersdorf on Bail*, 513).

V. But whether this be so or not, in 1846 came a statute qualifying the jurisdiction of *all* officers in letting to bail— which is recited in the indictment. This act is in spirit taken from divers English statutes. (*Petersdorf on Bail*, 507).

VI. Before 1833, no police justice could bail unless the

prisoner was charged with an offence whose maximum of imprisonment was five years. After 1846, no police justice (among other officers) could bail unless he were committing magistrate, or unless certain formalities had been complied with, to give him jurisdiction. The law prior to 1833 has a prohibition by implication, or more properly by a negative growing out of an affirmation. That of 1846 was a positive prohibition. The concurrent statute made the doing the act thus under prohibition a misdemeanor. It was analogous to the statute of 5 Edward III., c. 8, whereby the Marshal of the Queen's Bench was prohibited from bailing persons indicted of felony on pain of half a year's imprisonment. Judge Bogart had jurisdiction of the person of William Lawson by virtue of his own warrant and commitment; but of William Nambe, who happened to be the same man, and who was committed by another magistrate, he had not, because the requisites of the statute to confer jurisdiction had not been complied with. Yet he *wilfully* bailed without his jurisdiction, because, as the evidence shows, "he thought he had a right;" and thus acted with knowledge as to the question of power. Even if he had acted ignorantly, he would have been no better off in his legal *status*. (People *v.* Brooks, 1 *Den.*, 457 ; *Dwarris on Stat.*, 677 ; Saintsbury's Case, 4 *T. R.*, 457 ; Yates *v.* Lansing, 5 *Johns*, 282 ; 1 *Gabbett's Cr. Law*, 780 ; *Bac. Abr. Tit. Bail.* 595 ; The People *v.* Lohman, 1 *Comst.*, 379).

By THE COURT,* ROOSEVELT, J.—The defendant was indicted by the grand jury for a misdemeanor in violating his duty as a police justice, by unlawfully letting a prisoner to bail, without authority and without notice to the district attorney. The surety, it appears, (one Joseph Porkousky) turned out to be "not what he represented himself," and when his presence was needed—the usual case of what is denominated straw bail—neither he nor his principal was to be found. On the trial of the justice, which took place in February last before the Court of Sessions, for the alleged misdemeanor, the jury after a short consultation under the charge of the city judge, returned a verdict of guilty. Sundry exceptions were taken

* Roosevelt, Clerke and Whiting, J. J.

to the charge ; and on these exceptions the case is now brought before the general term of the Supreme Court for review.

The principal point made by the defendant's counsel on the argument, was that the court below erred in charging the jury that in order to sustain the indictment, it was not necessary to prove corruption. We think the court were right. No such proof is required. The law says (2 *R. S.*, 696, § 39) that "where the performance of any act is prohibited, &c., the doing such act shall be deemed a misdemeanor." It does not say the doing such act *corruptly*, but the *doing* it, shall constitute the offence. Every citizen, and especially every police justice, is presumed in such cases to know the law, and when he does an act which the law prohibits, he is presumed to *intend* to do it, and, as a consequence, to intend to break the law. The allegation, therefore, in the indictment, that the defendant " did wilfully, maliciously, unlawfully and corruptly do an act prohibited by law," is a mere legal conclusion. They are formal words inserted more to give solemnity to the indictment than for any other purpose.

That Justice Bogart was not the committing magistrate in the complaint of Miller against Lawson appears from the recognizance taken by him. He of course knew that he was not. The warrant for that offence was before him, signed, not by him, but by the recorder. He knew—he certainly was bound to know—that the statute. (*Laws of* 1846, 408) expressly declared that " no officer, other than the committing magistrate, should let to bail any person charged with a criminal offence, unless notice of the application to bail such person shall have been given to the district attorney," &c. He knew that Nambe, *alias* Lambe, *alias* Lawson, the alleged thief, was not only charged but indicted. All this appeared in Recorder Smith's commitment, and in the recognizance signed by himself. He knew also that the district attorney was not apprised of the intended application. In bailing the prisoner under these circumstances he could not help knowing that he was doing an act which the law expressly prohibited his doing. He was acting therefore intentionally, wilfully, or, in legal parlance, " corruptly." The expressions as thus used—not an uncommon occurrence in legal documents—are synonymous.

They have the same meaning as in a plea of usury alleging that the party "wilfully and corruptly" exacted more than seven per cent. The offence imputed to the officer was the doing of an unlawful act knowingly. In such case, as the judge below expressed it, "the proof of doing the act is evidence of a bad motive, and constitutes the offence."

It may be that the party accused would have the right to rebut the inference. The defendant has not done so. He has not attempted to do so. The judge, moreover, instructed the jury that "if there was any evidence tending to prove that fact (namely, a misconception of the full force of the statute), with the view to rebut the presumption of bad intention arising from the doing of the act," they might, "under all the circumstances take it into consideration." He further expressly charged the jury, "that if the defendant had proved anything which in their judgment could show that notwithstanding the legal presumption of intention, he acted honestly and did not mean to do wrong, they should take that into consideration to rebut the presumption." It seems to me this was all the court could be asked to say, and the verdict therefore under such a charge must be understood as a finding by the jury that the wrong done was not the result of an honest mistake. To call such an act judicial, and therefore like other judicial errors, exempt from indictment, would be to repeal the statute,—I mean the statute which prohibits magistrates from thus *exparte* interfering with and in effect nullifying each other's commitments. With such a construction, error of judgment would be the universal plea, and acquittal the universal result.

Judgment affirmed.

CLERKE, J., concurred.

WHITING, J., dissented.